Alla **KHEYFETS**, Appellant,

v.

**COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 28, 1994.

Decided Jan. 9, 1995.

---

Kenneth C. Jones, for appellant.

David R. White, Asst. Counsel—Appellate Section, and Timothy P. Wile, Asst. Counsel In–Charge Appellate Section, for appellee.

Before PELLEGRINI and FRIEDMAN, JJ., and DELLA PORTA, Senior Judge.

FRIEDMAN, Judge.

Alla Kheyfets (Licensee) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) sustaining the suspension of her operating privilege imposed by the Department of Transportation, Bureau of Driver Licensing (DOT) pursuant to 75 Pa.C.S. § 1547(b)(1) (refusal to submit to chemical testing).[1] We reverse.

On October 24, 1993, Upper Southampton police officer Theresa DiSantis was dispatched to investigate a reported hit-and-run accident. (N.T. at 4.)[2] At the scene, Officer DiSantis encountered Licensee standing beside her vehicle in a Taco Bell parking lot. (N.T. at 4–5.) Upon questioning Licensee, Officer DiSantis noticed that Licensee's breath smelled of alcohol, her eyes were bloodshot, her speech was slurred, and she was unsteady on her feet. (N.T. at 5.) After Licensee unsuccessfully performed a series of field sobriety tests, Licensee was placed under arrest for driving under the influence of alcohol in violation of 75 Pa.C.S. § 3731. (N.T. at 5–6.)

Officer DiSantis informed Licensee of the Implied Consent Law,[3] asked Licensee to submit to a blood test, and transported Licensee to Bucks County Hospital. (N.T. at 6–8.) Although Licensee initially agreed to submit to the blood test, she refused to do so at the hospital until she could talk to her husband. (N.T. at 7–8.) Officer DiSantis "explained to her that this was her driver's license, her husband had nothing to do with the test and after the test was completed, we would contact her husband with no problem...." (N.T. at 8.) Nevertheless, Licen-

1. The "Implied Consent Law," which is found at 75 Pa.C.S. § 1547(a) and (b), provides in relevant part:

   (a) **General Rule.**—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle: (1) while under the influence of alcohol....
   (b) **Suspension for refusal.**—
   (1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.
   (2) It shall be the duty of the police officer to inform the person that the person's operating

privilege will be suspended upon refusal to submit to chemical testing.

2. Licensee's reproduced record does not contain a copy of the trial court transcript. Therefore, we will refer to the relevant portions of the transcript, as provided in the original record, by the designation (N.T. at ——). *See* Pa.R.A.P. 2152(c).

3. Officer DiSantis testified as follows:

   A. And I gave her implied consent—
   THE COURT: Now, when you give those warnings, do you read them from a sheet?
   THE WITNESS: No.
   THE COURT: You have them memorized?
   THE WITNESS: Yes.
   THE COURT: Okay. Repeat for the record the warnings you gave her.
   THE WITNESS: I asked her if she would go with me to take a blood test at the hospital and if she didn't, if she refused the test, that she would lose her license for a period of one year. If she took the test, she would still be arrested, and the outcome of the arrest would say whether she was intoxicated or not.
   (N.T. at 7.)

see refused to submit to the blood test. Officer DiSantis recorded a refusal (N.T. at 9–10), and DOT subsequently notified Licensee that her operating privilege would be suspended due to that refusal.

The trial court determined that Officer DiSantis adequately warned Licensee that she would lose her operating privilege if she refused to submit to the blood test.[4] Consequently, the trial court affirmed the license suspension.

■ Licensee now appeals to this court[5] and asks us to determine whether the trial court erred in holding that Licensee was given proper warnings under *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989).[6]

■ In *O'Connell*, the Pennsylvania Supreme Court held that when a licensee has been given *Miranda*[7] warnings and is subsequently asked to submit to a chemical test, the attending police officer must explain to the licensee that: (1) her driving privileges will be suspended for one year if she refuses chemical testing, and (2) her *Miranda* rights do not apply to chemical testing. *Commonwealth v. Ingram*, 538 Pa. 236, 648 A.2d 285 (1994). This explanation is required even when *Miranda* rights are not given if a licensee asks to speak with someone. *Id.*

Here, Licensee was not given *Miranda* warnings. (N.T. at 10.) However, she did ask to speak to her husband prior to taking the blood test. (N.T. at 7–8.) By requesting

to speak to her husband, Licensee was entitled to *O'Connell* warnings.[8] *Figurski v. Department of Transportation, Bureau of Driver Licensing*, 162 Pa.Commonwealth Ct. 499, 639 A.2d 909 (1994).

There is competent evidence of record to support the trial court's holding that Officer DiSantis explained to Licensee that her driving privilege would be suspended for one year if she refused to submit to the blood test. (N.T. at 6–8.) However, there is no indication in the record that any police officer specifically told Licensee that her *Miranda* rights did not apply to the civil nature of chemical testing. As such, both elements of a proper *O'Connell* warning were not given.

DOT had the burden of proving the sufficiency of the *O'Connell* explanation and the responsibility to bring all relevant evidence at the time of the trial court hearing in order to provide for a proper adjudication of Licensee's appeal. DOT, however, failed to meet its burden, and the trial court erred in affirming the license suspension by assuming the adequacy of the warnings given to Licensee.

Accordingly, the trial court's order is reversed.

### ORDER

AND NOW, this 9th day of January, 1995, the order of the Court of Common Pleas of

---

4. Although the trial court did not file a formal opinion, the trial court's reason for its decision does appear of record. Pa.R.A.P.1925.

5. In reviewing a driver's license suspension case, our scope of review is limited to determining whether the findings of fact of the trial court are supported by competent evidence and whether the trial court committed an error of law or a manifest abuse of discretion in reaching its decision. *Commonwealth v. Ingram*, —— Pa. ——, 648 A.2d 285 (1994).

6. To sustain a license suspension under 75 Pa. C.S. § 1547(b), DOT must establish that the licensee:
   (1) was arrested for driving while under the influence of alcohol,
   (2) was requested to submit to a chemical test,
   (3) refused to submit to such a test, and

(4) was specifically warned that a refusal would result in the revocation of his driver's license.
*Ingram.* After DOT has established its prima facie case, the burden shifts to the licensee to prove by competent evidence that she was physically unable to take the test or was incapable of making a knowing and conscious refusal. *Id.*

7. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

8. This court has held that when *Miranda* warnings are given *or* when the licensee requests to speak to an attorney *or anyone else*, the *O'Connell* warnings must be given, because either of these situations are perceived to constitute *per se* confusion. *Figurski v. Department of Transportation, Bureau of Driver Licensing*, 162 Pa.Commonwealth Ct. 499, 639 A.2d 909 (1994).

Philadelphia County, dated April 12, 1994, is hereby reversed.